**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Israel J. Alvarez,

        Petitioner,

vs.

Charles L. Ryan, et al.,

        Respondents.

CV11-0098-TUC-FRZ (JR)

**REPORT AND RECOMMENDATION**

      Pending before the Court is Israel J. Alvarez's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1

I.      <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

The Arizona Court of Appeals summarized the factual background of Alvarez convictions as follows:

> The evidence showed that Alvarez and S. had been together for two or three days in June 2001, smoking crack cocaine. After they met Ramon Cruz and Warren Nixon, the four took a drive in S.'s rented white Chevrolet Cavalier. At some point, the four went to a desert area to smoke more crack cocaine. According to Alvarez, Nixon then said he wanted to take the car from S., and Nixon and Cruz pulled S. out of the car and beat him. Nixon, Cruz, and Alvarez then drove away in the rental car.
>
> Deputy Sheriff Maurice Othic found S. staggering down a road around 3:00 p.m. on June 10, with blood "all in his hair and all on his face." Othic said S. had "pretty much collapsed" on the trunk of the patrol vehicle and had slipped in and out of consciousness. Othic was able to learn S.'s first name. Before S. lost consciousness again, he told Othic three men had "jumped him and [had taken] his '95 white Suzuki."
>
> In May 2001, S. had reported to police that his Suzuki had been stolen. In June, S. was driving a rental car, a white Chevrolet Cavalier. A customs inspector stopped the Cavalier about 4:30 p.m. on June 10 at the international border because its occupants were "looking out the windows . . . [and] didn't seem like they knew where they were going." The men had no identification, and Alvarez gave conflicting stories about who owned the car. In the car, the inspector found a rental contract with S.'s name on it and called the rental company, whose representative asked him not to allow the three men to take the car to Mexico. Alvarez then walked into Mexico.
>
> On June 12, S. died from multiple blunt force injuries to his head. His blood was found on clothing belonging to Alvarez, Cruz, and Nixon and on two concrete blocks found at the murder scene.

*State v. Alvarez ("Alvarez I")*, 210 Ariz. 24, 26, 107 P.3d 350, 352 (App. 2005), *opinion vacated in part and supplemented by State v. Alvarez ("Alvarez II")*, 213 Ariz. 467, 143 P.3d 668 (App. 2006).  A jury convicted Alvarez of felony murder and

1    aggravated robbery, and the trial court sentenced him to concurrent prison terms of

2    life and 6.5 years. *Alvarez II*, 213 Ariz. at 468.

3         Alvarez appealed his conviction, claiming that the trial court erred (1) when

4    defining reasonable doubt for the jurors; (2) when defining the crime of felony

5    murder for the jurors; (3) by denying his motion for judgment of acquittal because

6    the evidence was insufficient to support his convictions; (4) by admitting alleged

7    hearsay evidence; and (5) by dismissing a first indictment against him without

8    prejudice. Exs. A, B.[1]  The Court of Appeals denied Alvarez's appeal on the merits.

9    *Alvarez I*, 210 Ariz. 24, 107 P.3d 350.  Alvarez sought review of the decision by the

10   Arizona Supreme Court.  Ex. C.  The Supreme Court granted review and ultimately

11   remanded the case to the Court of Appeals for reconsideration in light of the United

12   States Supreme Court's then-recent decision in *Davis v. Washington*, 547 U.S. 813

13   (2006).  Ex. D.

14        On remand, and after supplemental briefing by the parties, the Court of

15   Appeals again denied Alvarez's direct appeal on the merits.  *See Alvarez II*, 213 Ariz.

16   467, 143 P.3d 668.  Alvarez again sought review by the Arizona Supreme Court.  Ex.

17   E.  On April 19, 2007, the Arizona Supreme Court denied review.  Ex. F.  Alvarez

18   did not seek review by the United States Supreme Court.  *Petition*, p. 3.

19        On December 26, 2004, while his direct appeal remained pending, Alvarez

20   initiated state post-conviction relief ("PCR") proceedings by filing a notice.  Ex. G.

21   _____

22   [1] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
     Respondents Answer to Petition for Writ of Habeas Corpus (Doc. 10).

3

1    Alvarez thereafter successfully moved to stay his PCR proceedings pending the

2    resolution of his direct appeal. Exs. H, I.[2]

3        After the trial court lifted the stay, Alvarez filed a PCR petition and an

4    amended petition. Exs. J, K. Alvarez argued that (1) his trial counsel was ineffective

5    during the plea bargaining process because he did no communicate to Alvarez the

6    State's plea offer and did not "adequately explain the relative strength of the state's

7    case;" (2) a then-recent change in state law would have induced him to accept the

8    plea offer if he had been aware of it; and (3) he was entitled to be resentenced. Exs.

9    J, K. The trial court denied each of Alvarez's claims on the merits. Ex. L. Alvarez

10   filed a petition for review in the Arizona Court of Appeals and, on April 29, 2010,

11   granted review, but denied relief. Ex. M. Alvarez did not petition the Supreme

12   Court for review. Ex. N.

13       In the petition now before the Court, Alvarez raises five claims. In Ground

14   One, he alleges the trial court erred by refusing to grant his motion for judgment of

15   acquittal based on insufficient evidence.  In Ground Two, he alleges that his counsel

16   was ineffective for failing to tell him that the state had offered Alvarez a plea

17   agreement.  In Ground Three, he alleges that a then-recent state-court decision

18   clarifying the application of accomplice liability under state law would have induced

19   _____

20   [2] Respondents note that they were unable to locate the trial court's order granting
     Alvarez's stay request; however, the original motion to stay (Ex. H) and a later trial
21   court order lifting the stay (Ex. I), which is dated after the Arizona Supreme Court
     denied review following the Arizona Court of Appeals decision in *Alvarez II*,
22   evidence the stay.

him to take the plea had he been aware of it and understood it.  In Ground Four, he alleges that the trial court did not properly define the crime of felony murder in the instructions given to the jury.  Ground Five alleges that the trial court erred by admitting into evidence the victim's statements that he had been "jumped" by three men and had his car stolen because that statement was inadmissible hearsay and violated the Sixth Amendment's confrontation clause. *Petition*, pp. 3-10.

## II.   <u>TIMELINESS</u>

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  Petitions filed beyond the one-year limitations period must be dismissed.  *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, the record shows that after the Arizona Supreme Court denied review on April 19, 2007. Ex. F.  Alvarez then had 90 days to petition the United States Supreme Court for review.  Sup.Ct.R. 13.  He did not do so.  Thus, his convictions became final on direct review 90-days later, on July 18, 2007.  *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (conclusion of direct review occurs when the 90-day time period during which a defendant may file a petition for writ of certiorari in the United States Supreme Court expires, regardless of whether the petitioner files such a petition).

The one-year limitation period did not begin to run immediately because Alvarez's PCR petition was still pending.  *See* 28 U.S.C. § 2244(d)(2).  Alvarez's PCR petition remained pending at least until April 29, 2010, when the Arizona Court of Appeals denied relief. Ex. M.    Because Alvarez filed the instant petition on March 7, 2011, well within a year of that date, it is timely.

III.   **LEGAL DISCUSSION**

Respondents argue that Grounds Three, Four, Five, and a portion of Ground One fail to state a federal claim that is cognizable on habeas review.  Additionally, Respondents contend that to the extent the Court reaches the merits on Grounds One,

6

1   Two and Five, the state court did not unreasonably apply clearly established federal

2   law in rejecting the claims.

3        **A.      Non-Cognizable Claims**

4        A state prisoner can obtain federal habeas relief only if his conviction violates

5   the Constitution or the laws and treaties of the United States.  *See* 28 U.S.C. § 2254;

6   *Engle v. Isaac*, 456 U.S. 107, 119 (1982).  Federal habeas corpus relief is not

7   available for errors of state law.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Federal

8   courts accept a state court's interpretation of state law "and alleged errors in the

9   application of state law are not cognizable in federal habeas corpus."  *Langford v.*

10  *Day*, 110 F.3d 1380, 1389 (9ᵗʰ Cir. 1996).  It is not the province of the federal courts

11  to re-examine state court determinations of state law questions.  *Estelle v. McGuire*,

12  502 U.S. 62, 67–68 (1991).  "In conducting habeas review, a federal court is limited

13  to deciding whether a conviction violated the Constitution, laws, or treaties of the

14  United States."  *Id*. at 68.

15       A petitioner may not "transform a state-law issue into a federal one merely by

16  asserting a violation of due process."  *Langford*, 110 F.3d at 1389.  "[T]he Supreme

17  Court has long settled that the Fourteenth Amendment does not assure immunity

18  from judicial error or uniformity of judicial decisions."  *Little v. Crawford*, 449 F.3d

19  1075, 1082 (9ᵗʰ Cir. 2006).  "The Due Process Clause does not permit the federal

20  courts to engage in a finely tuned review of the wisdom of state evidentiary rules."

21  *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983).  "Beyond the specific

22  guarantees enumerated in the Bill of Rights, the Due Process Clause has limited

7

1    operation." *Dowling v. United States*, 493 U.S. 342, 352 (1990).  In the absence of a

2    specific constitutional violation, federal habeas review of state court trial errors is

3    limited to whether the error "'so infected the trial with unfairness as to make the

4    resulting conviction a denial of due process.'"  *Lewis*, 497 U.S. at 780 (quoting

5    *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

6                                **1.    Ground One**

7         In Ground One, Alvarez alleges that there was insufficient evidence to sustain

8    a conviction and that the trial court should have granted his motion for acquittal filed

9    pursuant to Ariz.R.Crim.P. 20.  Respondents correctly assert that, to the extent this

10   claim is based on the alleged misapplication of Rule 20, the federal courts must

11   accept the state court's interpretation of the rule.  *Langford*, 110 F.3d at 1389.

12   However, as Respondents recognize, to the extent that Alvarez is contending that his

13   federal constitutional rights were violated because the evidence was insufficient to

14   support the verdict, the claim is cognizable and is addressed on the merits herein.

15                               **2.    Ground Three**

16        In Ground Three, Alvarez alleges that a then-recent state-court decision

17   clarifying the application of accomplice liability under state law would have induced

18   him to take the plea had he been aware of it and understood it.  In the state case to

19   which Alvarez refers, *State v. Garnica*, 209 Ariz. 96, 98 P.3d 207 (App. 2004), the

20   court addressed whether, under A.R.S. § 13-301, "a person can be an accomplice to

21   an offense that is premised on a reckless mental state."  209 Ariz. at 96.  The

22

                                           8

1    discussion in the case is based entirely on the interpretation of state law and no

2    federal authority, constitutional or otherwise, is mentioned in the decision.

3    It is well-established that the definition of the scope and nature of state law

4    crimes is left to the state legislatures and courts.  *Patterson v. New York*, 432 U.S.

5    197, 201-02 (1977).  To the extent Alvarez requests that the Court conclude that a

6    purported change in accomplice liability would have compelled him to take the plea

7    he was offered, it would be improper to do so.  *Estelle v. McGuire*, 502 U.S. at 67–68

8    (federal habeas courts should not re-examine state court determinations of state law

9    questions).  Thus, this claim, to the extent it requests the court to reexamine state law,

10   is not cognizable.

11   However, the claim can also be read as evidencing ineffective assistance by

12   Alvarez's counsel in advising him on the nature and implications of entering into the

13   plea agreement.  To the extent that this is the case, the arguments raised in this claim

14   will be considered in conjunction with the examination of Claim Two, which directly

15   raises the ineffectiveness claim.

16   **3.    Ground Four**

17   In Ground Four, Alvarez alleges that the trial court did not properly define the

18   crime of felony murder in the instructions given to the jury.  This claim is clearly not

19   cognizable.  "Under our federal system, the States possess primary authority for

20   defining and enforcing the criminal law."  *United States v. Lopez*, 514 U.S. 549, 561

21   n.3 (1995) (citations omitted).  A challenge to a jury instruction solely as an error

22   under state law does not state a claim cognizable in federal habeas corpus

9

1   proceedings. *See McGuire*, 502 U.S. at 71–72.  Alvarez alleges only that the trial

2   court wrongly instructed the jury under the state felony murder law.  That claim is

3   not within the purview of federal habeas relief.

### 4.   Ground Five

5   Ground Five alleges that the trial court erred by admitting into evidence the

6   victim's statements that he had been "jumped" by three men and had his car stolen

7   because that statement was inadmissible hearsay and violated the Sixth

8   Amendment's confrontation clause.  State evidentiary rulings are not cognizable in a

9   federal habeas proceeding unless federal constitutional rights are affected.  *McGuire*,

10  502 U.S. at 68; *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1999).  Thus, to the

11  extent Alvarez is challenging the admission of the victim's statement on state law

12  grounds, it is not cognizable.  However, his contention that the statement's admission

13  violated the U.S. Constitution's confrontation clause is reviewed below on the merits.

### B.   Merits

15  Under the AEDPA, a federal court "shall not" grant habeas relief with respect

16  to "any claim that was adjudicated on the merits in State court proceedings" unless

17  the state decision was (1) contrary to, or an unreasonable application of, clearly

18  established federal law as determined by the United States Supreme Court; or (2)

19  based on an unreasonable determination of the facts in light of the evidence presented

20  in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

21  S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

22  if it fails to apply the correct controlling authority, or (2) if it applies the controlling

1    authority to a case involving facts "materially indistinguishable" from those in a

2    controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212

3    F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is

4    contrary to federal law, the court must examine the last reasoned decision of a state

5    court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101

6    (9th Cir. 2002). A state court's decision can be an unreasonable application of federal

7    law either (1) if it correctly identifies the governing legal principle but applies it to a

8    new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

9    to extend a clearly established legal principle to a new context in a way that is

10   objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

### 1.    Ground One

12        A habeas petitioner who contends that the evidence introduced at trial was

13   insufficient to support the jury's guilty verdict states a cognizable federal habeas

14   claim. *See Herrera v. Collins,* 506 U.S. 390, 401–02 (1993). Under *Jackson v.*

15   *Virginia*, 443 U.S. 307, 319 (1979), the standard is whether "any rational trier of fact

16   could have found the essential elements of the crime beyond a reasonable doubt."

17   The *Jackson* standard is applied with reference to the state law defining the elements

18   of the crime at issue. *See Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir.) (en banc),

19   *cert. denied*, 543 U.S. 956 (2004).

20        On habeas review, the court "makes no determination of the facts in the

21   ordinary sense of resolving factual disputes." *Sarausad v. Porter*, 479 F.3d 671, 678

22   (9th Cir.) (internal quotation marks omitted), *vacated in part on other grounds on*

1  *reh'g*, 503 F.3d 822 (9th Cir. 2007), *rev'd on other grounds*, 555 U.S. 179 (2009).

2  The reviewing federal court "must respect the province of the jury to determine the

3  credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences

4  from proven facts by assuming that the jury resolved all conflicts in a manner that

5  supports the verdict." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995); *see also*

6  *Jackson*, 443 U.S. at 319, 324, 326.

7      Where, as here, a state court has issued a reasoned decision rejecting a claim

8  of insufficient evidence under a standard that is not "contrary to" *Jackson*, a

9  reviewing federal court applies an additional layer of deference. *See Juan H. v.*

10  *Allen*, 408 F.3d 1262, 1274 (9th Cir.2005) (as amended), *cert. denied*, 546 U.S. 1137

11  (2006). Habeas relief is warranted only where "the state court's application of the

12  *Jackson* standard [was] 'objectively unreasonable.'" *Id*. at 1275 n. 13. Thus, a state

13  court's resolution of an insufficiency of the evidence claim is evaluated under 28

14  U.S.C. § 2254(d)(1), rather than § 2254(d)(2). *See Sarausad*, 479 F.3d at 677–78.

15      In rejecting this claim, the Arizona Court of Appeals applied standards

16  applicable to Rule 20, Ariz.R.Crim.P., that are consistent with, and not contrary to,

17  *Jackson's* standard that a claim of insufficient evidence be granted only where no

18  rational trier of fact "could have found the essential elements of the crime beyond a

19  reasonable doubt." *Jackson*, 443 U.S. at 319. The standard applied by the Arizona

20  Court of Appeals required reversal only where "there is no substantial evidence to

21  support the conviction," and where there is "a complete absence of probative facts to

22  support a conviction." *Alvarez I*, 210 Ariz. at 27 (citations and internal quotations

1   omitted).  The Court of Appeals noted that "[i]f reasonable minds can differ on the

2   inferences to be drawn from the evidence, a trial court has no discretion to enter a

3   judgment of acquittal and must submit the case to the jury."  *Id.*

4       Applying these standards, the Court of Appeals concluded:

5       Substantial evidence supports Alvarez's convictions.  S.'s statement,
    Alvarez's confession, the testimony that S.'s blood had been found on

6   Alvarez's shoe, and the testimony of the customs inspector about
    Alvarez's behavior at the border constituted sufficient evidence to

7   require the trial court to submit the case to submit the case to the jury.

8       Alvarez argues that only S.'s statement—that *three* men had "jumped
    him"—inculpated Alvarez and that the other evidence only placed him

9   at the scene.  He also contends S.'s statement was hearsay.  In fact S.'s
    statement to Othic did not name Alvarez or describe him.  Only when

10  connected to other evidence does S.'s statement inculpate Alvarez.  In
    any event, even disregarding S.'s statement, the state presented

11  sufficient evidence from which a reasonable jury could have inferred
    that Alvarez had been more than a "passive observer."  The trial court

12  thus did not abuse its discretion in denying Alvarez's Rule 20 motion.

13  *Alvarez I*, 210 Ariz. at 27-28.  Alvarez argues that this decision was unreasonable

14  because there was "no evidence" or "eye witness testimony" to support his

15  conviction and that evidence was "made up."  *Petition*, pp. 6, 10.  Alvarez's

16  arguments are unconvincing and the state courts reasonably rejected this claim.

17      Alvarez was convicted of aggravated robbery and felony murder.  Aggravated

18  robbery is defined under two statutes, A.R.S. § 13-1902 and 1903,[3] which taken

19  together, and as applicable here, provide that an individual commits aggravated

20  robbery by, under the use or threatened use of force, taking another's property from

21      _____

22  [3] The statutes referenced are those in effect at the time of Alvarez's conviction.

13

1    his person or immediate presence while aided by one or more accomplices.  A.R.S.

2    §§ 13-1902 & 1903 (West 2001).   The basic underlying facts of Alvarez's

3    conviction, as determined by the state court support his conviction on this count.

4    Alvarez was stopped at the border riding in the victim's rental car with two other

5    men.   The victim was found bleeding and later died from his wounds.   Alvarez

6    admitted his involvement and the victim's blood was found on his shoe.  These facts

7    alone would allow a rational trier of fact to find Alvarez guilty of aggravated

8    robbery.  *Jackson,* 443 U.S. at 318-19.   Adding the victim's statement that he had

9    been jumped by three men who stole his car, which as discussed below was

10   reasonably admitted at Alvarez's trial, only adds to the evidence upon which the state

11   court relied in rejecting this claim.

12        As the Respondents note, once the jury concluded that Alvarez was guilty of

13   aggravated robbery, his conviction for felony murder under Arizona law was also

14   reasonable.  At the time of Alvarez's conviction, Arizona first degree murder statute,

15   in pertinent part, provided that a person commits first degree murder if "the person or

16   another person causes the death of any person" in the course of committing a

17   robbery.  A.R.S. § 13-1105(A)(2) (West 2001).  It is undisputed that the victim died

18   of the injuries he sustained when Alvarez and his accomplices took his car.  Based on

19   these facts, a "rational trier of fact could have found the essential elements of the

20   crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 318-319.

21        In the face of these facts, Alvarez cannot support his contentions that there

22   was "no evidence" or that the evidence was "made up."  His statements, the victim's

1   statement, and the physical and circumstantial evidence all constitute evidence that

2   was not "made up."   Additionally, the allegation that there were no eye witnesses is

3   not accurate and, even if it were, not a basis for relief.  There were at least three eye-

4   witnesses to the crime—Alvarez and two men with him.   Alvarez's confession

5   provided eye witness testimony.  Moreover, "circumstantial evidence can be used to

6   prove any fact, including facts from which another fact is to be inferred, and is not to

7   be distinguished from testimonial evidence insofar as the jury's fact-finding function

8   is concerned." *Payne v. Borg*, 982 F.2d 335, 339 (9th Cir.1992), *cert. denied*, 510

9   U.S. 843 (1993).  Thus, the circumstantial evidence cited by the state court supported

10  the rejection of this claim and the state court's decision was "objectively reasonable."

11  *Juan H.*, 408 F.3d at 1274. (9th Cir.2005) (as amended), *cert. denied*, 546 U.S. 1137

12  (2006).

13  **2.   Ground Two**

14  Ground Two, and the portion of Ground Three that is cognizable, is based on

15  allegations of ineffective assistance of counsel.  Criminal defendants have a Sixth

16  Amendment right to counsel that extends to the plea-bargaining process. *Lafler v.*

17  *Cooper*, 132 S.Ct. 1376 (2012) (citations omitted).   "During plea negotiations

18  defendants are entitled to the effective assistance of competent counsel."  *Id*. (citation

19  and internal quotation marks omitted).   The familiar *Strickland* test applies to

20  challenges to guilty pleas based on ineffective assistance of counsel.   *Hill v.*

21  *Lockhar*t, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. 668

22  (1984)).   Under *Strickland*, Alvarez must show both deficient performance and

15

1  prejudice in order to establish that counsel's representation was ineffective.

2  *Strickland*, 466 U.S. at 687.  Deficient performance is established by a petitioner's

3  showing that counsel's performance fell below an objective standard of

4  reasonableness.  *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 688).  In the

5  context of rejecting a plea offer, the question is "not whether 'counsel's advice [was]

6  right or wrong, but . . . whether that advice was within the range of competence

7  demanded of attorneys in criminal cases.'"  *Turner v. Calderon*, 281 F.3d 851, 880

8  (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

9  "Counsel cannot be required to accurately predict what the jury or court might find,

10  but he can be required to give the defendant the tools he needs to make an intelligent

11  decision."  *Id*. at 881.

12      To establish prejudice, the petitioner must show that there is a reasonable

13  probability that, but for counsel's unprofessional errors, the result of the proceeding

14  would have been different.  *Cooper*, 132 S.Ct. at 1384 (citing *Strickland*, 466 U.S. at

15  694).  "In the context of pleas, a defendant must show the outcome of the plea

16  process would have been different with competent advice."  *Id*.  When applying these

17  standards to a claim that ineffective assistance led to the improvident rejection of a

18  guilty plea, the petitioner must show "that but for the ineffective advice of counsel

19  there is a reasonable probability that the plea offer would have been presented to the

20  court (i.e., that the defendant would have accepted the plea and the prosecution

21  would not have withdrawn it in light of intervening circumstances), that the court

22  would have accepted its terms, and that the conviction or sentence, or both, under the

1    offer's terms would have been less severe than under the judgment and sentence that

2    in fact were imposed." *Cooper*, 132 S.Ct. at 1386.

3          Federal habeas rules also instruct that, if the state court has already rejected a

4    claim of ineffective assistance of counsel, a federal habeas court may grant relief

5    only if it finds the state court's decision was contrary to, or an unreasonable

6    application of the *Strickland* standards.  *See Yarborough v. Gentry*, 540 U.S. 1, 5

7    (2003).  The review of counsel's performance must be "highly deferential" and must

8    adopt counsel's perspective at the time of the challenged decision or conduct, in

9    order to avoid the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  There

10   is a strong presumption that counsel's conduct falls within the wide range of

11   reasonable assistance, *id.,* and the Supreme Court had described federal review of a

12   state court's decision on a claim of ineffective assistance of counsel as "doubly

13   deferential."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v.

14   Mirzayance*, 556 U.S. 111, 112-113 (2009)).

15         In his ineffective assistance claims, Alvarez alleges that his lawyer never told

16   him that the state had offered him a plea agreement, did not explain the plea

17   agreement to him, only explained plea agreements "in theory," told him a plea

18   agreement would not change his sentence, and told him that his was the sort of case

19   to take to trial.  Alvarez also explains that when he stated "I didn't do nothing," he

20   really meant he "was not denying any plea the state is offering me." *Petition*, pp. 7-

21   8.

22

17

1   Addressing this claim in Alvarez's Rule 32 proceedings, the trial court, in a

2   ruling later adopted by the Arizona Court of Appeals (Ex. M), described the

3   following background:

4   > The Petitioner was indicted on October 16, 2001, on one count
> of first degree murder and one count of aggravated robbery. He was
5   > represented at trial by Edward Nesbitt, Esq. The State offered the
> Petitioner a plea agreement to manslaughter with a sentencing cap of
6   > fifteen years. The Petitioner rejected this offer. During a hearing held
> on January 18, 2002, the Court—at the request of the State—conducted
7   > an impromptu *Donald* hearing to determine whether counsel had
> conveyed the offer to the Petitioner. Counsel indicated that he had
8   > conveyed the offer to the Petitioner and felt that he understood it.
> Counsel also informed the Court—both during this hearing and later at
9   > sentencing—that the Petitioner did not feel that he had committed a
> crime and was rejecting the plea because he did not feel that he could
10  > lay a factual basis. Counsel stated that he had told the Petitioner to take
> the plea if he had "[taken] any part" in the offense. At one point during
11  > the *Donald* hearing while the State was explaining the terms of the plea
> agreement, the Petitioner stated, "I didn't do nothing."

12  *Answer*, Ex. L, p. 1 (citations to transcript omitted). Then, applying the two-prong

13  *Strickland* standard, the trial court provided the following analysis:

14
15  > The Petitioner argues that Counsel was ineffective because he
> failed to adequately explain the plea agreement offered by the State, or
16  > to explain how strong the State's case was. He argues that, had counsel
> done either, he would have accepted the plea agreement because it
17  > would have limited his sentencing exposure to fifteen years. Counsel
> informed the Court at the *Donald* hearing that he had explained the plea
18  > offer to the Petitioner and felt he understood it. However, even
> assuming for the sake of argument that counsel's performance was
19  > deficient, the Court finds that the Petitioner suffered no prejudice and,
> therefore, is not entitled to relief on the basis of ineffective assistance
20  > of counsel.

21  > At the *Donald* hearing, counsel indicated that the Petitioner was
> rejecting the plea agreement because he did not feel he was involved in
22  > the victim's death. Counsel stated, "I conveyed all the offers that were
> made to [the Petitioner] and [his] position is that he cannot support a

18

factual basis for manslaughter." [sic]  When the assigned prosecutor explained the terms of the plea agreement and the charges the Petitioner would have to lay a factual basis for to the Court, the Petitioner stated, "I didn't do nothing."  During the sentencing hearing held in this case, counsel made the following speech:

> "He told me that he didn't do this, he told me that he did not beat up that individual. . . .  When he was offered a plea with the top end of 15 years and we talked about whether he should take it or not, my advice was if you took any part in this, take the deal, if you did anything. Take the deal even if, though you may not have hit him or maybe you hit him or pushed him any part of this, take the deal.  But if you're telling me you didn't do any part of this, then don't do it.  You're going to have to come into court and tell the Judge that you did something, and then you can't take the plea.

The record clearly shows that the Petitioner rejected the plea agreement in this case because he did not feel that he had any involvement with the victim's death.  Therefore, he would not have been able to lay a factual basis for the plea.  Although the Petitioner repeatedly argues that he would have taken the plea if counsel had explained it to him more thoroughly, he had not shown that he would have been able to lay a factual basis that would have allowed the Court to accept his plea.  Because the Petitioner has failed to show that the plea would have been accepted, he has failed to state a colorable claim that he was prejudiced and the Court finds that he is not entitled to relief based on the ineffective assistance of counsel.

The Petitioner also argues that counsel failed to adequately explain the concept of accomplice liability to him and claims that, if he had understood that concept, he would have taken the plea.  However, the Petitioner concedes that counsel advised him to accept the plea if he "took any part" in the offense, "even if . . . [he] may not have hit" the victim.  Under the circumstances, the Court finds that counsel made the Petitioner aware that he could take the plea if he had any involvement whatsoever in the offense, and that this was a sufficient explanation of accomplice liability.  Accordingly, the Court finds that the Petitioner has failed to colorably show that he [sic] counsel filed to adequately explain accomplice liability, or that he suffered any prejudice.

1    Ex. L, pp. 2-3.

2         The state courts' rejection of this claim was not contrary to, or constitutes an

3    unreasonable application of, the *Strickland* standards.  The trial court first determined

4    that counsel explained the plea offer to Alvarez and believed that he understood it

5    and rejected it and insisted he was innocent.  This conclusion is borne out by the

6    portions of the record that were cited and relied upon by the trial court.  *See* Ex. P,

7    pp. 54-56.  In fact, other than Alvarez's contentions to the contrary, there is nothing

8    in the record that evidences a failure on his counsel's part to inform him of the

9    existence and nature of the plea agreement.

10        The trial court's conclusion that Alvarez's counsel adequately explained the

11   implications of accomplice liability is also supported by the record.  As the trial court

12   noted, Alvarez counsel recommended he take the plea even if he had not "took any

13   part" in the offense, and "even if . . . [he] may not have hit" the victim. Ex. Q, p. 16.

14   Those statements adequately convey that Alvarez was at risk of conviction and

15   should have taken the plea even if he was merely present when the victim was

16   beaten.  However, Alvarez nevertheless steadfastly claimed innocence and rejected

17   the plea.

18        As the trial court also concluded, Alvarez's continued claims of innocence

19   establish that, even if counsel's performance was deficient, Alvarez is unable to

20   establish prejudice.   To establish prejudice, Alvarez must show a reasonable

21   probability that, but for counsel's unprofessional errors, the result of the proceeding

22   would have been different. *Cooper*, 132 S.Ct. at 1384 (citing *Strickland*, 466 U.S. at

20

694).  As is relevant here, showing prejudice would require that Alvarez establish a reasonable probability that the plea offer would have been accepted by the court. *Cooper*, 132 S.Ct. at 1386.  However, Alvarez has consistently maintained his innocence, even at the time of sentencing.  Ex. Q, pp. 11-12.  Likewise, he offered nothing in his PCR petition or in the instant petition that suggests he could have offered a factual basis for the acceptance of the plea by the trial court.  Simply put, Alvarez cannot establish prejudice in light of his steadfast and repeated insistence of innocence.  On this record, the trial court's denial of this claim was not an unreasonably application of *Strickland*.

### 3.      Ground Five

The Confrontation Clause of the Sixth Amendment affords a criminal defendant the right to cross-examine witnesses against him.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).  In Ground Five, Alvarez claims this right was violated by the admission into evidence of the victim's statement to Deputy Othic that three men had "jumped him and [had taken] his '95 white Suzuki."  *Alvarez I*, 210 Ariz. at 26.  Alvarez specifically notes that cross-examination would have disclosed that the victim had in fact been carjacked a few weeks prior and his Suzuki was taken, and that the rental car Alvarez was traveling in was not a Suzuki. *Petition*, pp. 10-11.

This issue was the subject of the Arizona Supreme Court's remand of this case to the Arizona Court of Appeals.  In *Alvarez I*, the Court of Appeals denied the claim after determining that the victim's statement to Deputy Othic "was nontestimonial

1    hearsay" outside the scope of *Crawford v. Washington*, 541 U.S. 36 (2004), and that

2    the admission of the statement therefore did not violate Alvarez's confrontation

3    rights under the Sixth Amendment.   *Alvarez I*, 210 Ariz. at 30.   However, while

4    Alvarez's petition seeking review of the Court of Appeals' decision was pending

5    before the Arizona Supreme Court, the United States Supreme Court issued its

6    decision in *Davis v. Washington*, 547 U.S. 813 (2006), which also addressed the

7    scope of the Sixth Amendment's confrontation clause.   The Arizona Supreme Court

8    then remanded the case back to the Arizona Court of Appeals to reconsider its

9    decision in light of *Davis*.   Ex. D (remand order).

10        On remand, the Appeals Court briefly reviewed the facts and procedural

11   history of the case and, after concluding that Alvarez was entitled only to review for

12   fundamental error, addressed the question of whether the trial court had committed

13   constitutional error by allowing Deputy Othic to testify about the victim's statement.

14   *Alvarez II*, 213 Ariz. at 467-470.   The court then set-out the general rule from

15   *Crawford* that "the Sixth Amendment bars 'admission of testimonial statements of a

16   witness who did not appear at trial unless he was unavailable to testify and the

17   defendant had had a prior opportunity for cross-examination.'"   *Id*. at 470 (quoting

18   *Crawford*, 541 U.S. at 53-54, and citing *Davis*, 547 U.S. 813).   The court next set

19   forth *Crawford's* description of a "core class" of testimonial statements, which

20   included "'statements that were made under circumstances which would lead an

21   objective witness reasonably to believe that the statement would be available for use

22   at a later trial,' . . .   [and] [s]tatements taken by police officers in the course of

1  interrogations."  *Alvarez II*, 213 Ariz. at 470 (citing *Crawford*, 541 U.S. at 51-52)

2  (other citations omitted).

3       The Court of Appeals then turned to *Davis* and its companion case *Hammon v.*

4  *Indiana*, 547 U.S. 813 (2006), noting that the cases "attempted to clarify the

5  distinction between testimonial and nontestimonial statements for purposes of the

6  Confrontation Clause."  213 Ariz. at 470.  In *Davis*, the question before the Court

7  was whether statements made to a 911 operator by a victim during a domestic

8  disturbance were testimonial in nature. The Court concluded that the statements were

9  non-testimonial because the objective circumstances indicated that the "primary

10  purpose" of the police interrogation was to address an ongoing emergency, not to

11  create a record for trial.  Therefore, the statements were found to be admissible.  547

12  U.S. at 821–822.  On the other hand, in *Hammon*, the Supreme Court found that

13  statements made by a victim in a written affidavit given to police who responded to a

14  domestic disturbance call were testimonial.  Id. at 832.  The Court explained that

15  there was "no emergency in progress," as the perpetrator was with police in another

16  room, and the purpose of the questioning was not seeking to determine "what is

17  happening," but rather "what happened."  *Id*. at 830.

18       After contrasting *Davis* and *Hammond*, the Arizona Court of Appeals again

19  noted that the Supreme Court again had not attempted to provide an exhaustive list of

20  testimonial and nontestimonial statements, but did hold:

21       Statements are nontestimonial when made in the course of police
         interrogation under circumstances objectively indicating that the
22       primary purpose of the interrogation is to enable police assistance to

23

meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Alvarez II*, 213 Ariz. at 470 (quoting *Davis*, 547 U.S. at 822).  With this standard serving as a basis, the Court of Appeals then offered the following analysis:

> First, assuming Othic's brief questioning of the victim during his one-minute encounter with him constituted "interrogation," nothing in the record suggests the victim "would [have] reasonably expect[ed] [his statement] to be used prosecutorially or . . . made [it] under circumstances that would lead an objective witness reasonably to believe the statement would be available for use at a later trial." [*State v.*] *Parks*, 211 Ariz. 19 [(2005)]; *see also Crawford*, 541 U.S. at 51–52, 124 S.Ct. at 1364; [*State v.*] *King*, 212 Ariz. 372 [(2006)]; *State v. Rodriguez*, 722 N.W.2d 136 (Wis.Ct.App. 2006) (domestic violence victim's excited utterances to investigating officer, in which she described incident in detail and identified assailant, deemed nontestimonial). The record does not reflect that the semi-conscious victim was even aware that the person to whom he spoke was a law enforcement officer. As the state correctly points out, S. "did not identify any of the persons who 'jumped' him and took his vehicle," "provided no details concerning what those persons did to him," and "never mentioned, nor implicated, [Alvarez]." Nor did Deputy Othic ask for any such information.

213 Ariz. at 472.  The court then proceeded to conclude that the circumstances under which Othic obtained the statement indicated that the purpose of the questioning was to meet an ongoing emergency and was not intended to establish events that might be relevant to a future prosecution.  *Id.* (citations omitted).  The court reasoned as follows:

> Here, S. was found staggering in a roadway, bleeding profusely from his head, and slipping in and out of consciousness, prompting Deputy Othic to immediately summon medical assistance. S.'s injuries obviously were serious; indeed, they resulted in his death within forty-

24

eight hours.  We disagree with Alvarez's contentions that these facts do not reflect any "ongoing emergency," *Davis*, 547 U.S. at ——, 126 S.Ct. at 2273, and that Othic's asking S. "what happened" bore no relation to that emergency or S.'s injuries. Although the criminal activity that resulted in S.'s injuries and the ensuing charges against Alvarez had ended, the emergency that those events set in motion was very much ongoing. Under these circumstances, "[a]ny reasonable observer would understand that [the victim] was facing an ongoing emergency and that the purpose of the interrogation was to enable police assistance to meet that emergency." [*United States v.*] *Clemmons*, 461 F.3d [1057] at 1060–61 [(8th Cir. 2006)].  "The Confrontation Clause does not prohibit questioning when, as here, its purpose, viewed objectively, is to ascertain if there is an ongoing emergency." *Vinson* [*v. State*], 2006 WL 2291000, at *7, 221 S.W.3d at —— [(2006)], citing *Davis*, 547 U.S. at ——, 126 S.Ct. at 2276.

*Alvarez* II, 213 Ariz.  Based on this analysis, the Arizona Court of Appeals found that the admission of Othic's testimony about the victim's statement did not violate the Confrontation clause.  *Id*.

There is no dispute that the Arizona Court of Appeals applied the correct controlling authority to his issue.  *See Van Tran*, 212 F.3d at 1150.  The only question then is whether the court's application of these legal principles was "objectively unreasonable."  *Hernandez*, 282 F.3d 1132.  It was not.  The circumstances surrounding the victim's statement clearly set it apart from that class of statements, such as a "solemn declaration or affirmation," that were specifically characterized as "testimonial" in *Crawford*.  541 U.S. at 51, 68.  Deputy Othic had no idea what had caused the victim's injuries and his attackers, if there were any, were presumably still at large when he asked the questions that elicited the victim's statement.  As such, the Court of Appeals determination that the primary purpose of

1   the questioning was to confront an ongoing emergency was not unreasonable under

2   *Davis*.

3         The state court's conclusion is further bolstered by the United States Supreme

4   Court decision in *Michigan v. Bryant*, 131 S.Ct. 1143 (2011).  Although *Bryant* was

5   decided subsequent to the Arizona Court of Appeals' decision, it did not establish

6   new law and "simply elucidates" the standards established in *Crawford* and *Davis*.

7   *See Ocampo v. Vail*, 649 F.3d 1098, 1107 n. 12 (9th Cir. 2011) (noting that *Davis*

8   simply elucidates the governing clearly established Supreme Court precedent found

9   in *Crawford*).

10        In *Bryant*, the Supreme Court clarified that, when the primary purpose of

11  police questioning is to enable the police to meet an "ongoing emergency," the

12  victim's statements to the police identifying his assailants are admissible at trial, even

13  where the victim dies before trial and is not available for cross-examination.

14  *Michigan v. Bryant*, 131 S.Ct. 1143, 1154–55 (2011).  Not unlike the case now

15  before the Court, in *Bryant* the statements at issue were made by a shooting victim

16  who was asked by the police arriving at the scene "what had happened, who had shot

17  him, and where the shooting had occurred." *Id*. at 1163.  The shooter was not present

18  at the scene and the victim identified Bryant as the shooter.  *Id*. at 1163–64.  The

19  victim later died, but his statement identifying Bryant was introduced at Bryant's trial

20  through the police officer.  The Supreme Court held that the victim's statement was

21  not testimonial because the circumstances surrounding the questioning demonstrated

22  that the primary purpose of the questioning was to enable the police to meet an

26

1   ongoing emergency—locating an armed assailant—not to obtain evidence for trial.

2   *Id*. at 1165–67.   As a result, the court held that the admission of the victim's

3   statement did not violate the Confrontation Clause. *Id*. at 1167.

4          The facts in Alvarez's case are quite similar in several material respects to

5   those addressed in *Bryant*.  Officer Othic came upon the scene and discovered a man

6   that was bleeding profusely.  He understandably questioned the victim to determine,

7   at least in part, what had happened and who had done it.  At that time Deputy Othic

8   had no information as to whether the victim's attacker was still at large, still in the

9   immediate area, or possibly pursuing other victims.  Under the circumstances, it was

10   reasonable for the Court of Appeals to conclude that Officer Othic's questioning was

11   intended to address an ongoing emergency and not intended to obtain testimony for a

12   future prosecution. Thus, the admission of victim's statements did not violate the

13   Confrontation Clause because they were not testimonial in nature.  As such, the state

14   court's decision denying this claim was a reasonable application of *Crawford*.  *See* 28

15   U.S.C. § 2254(d).

16   **IV.    <u>RECOMMENDATION</u>**

17          Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

18   District Court, after its independent review, **deny** Alvarez's Petition for Writ of

19   Habeas Corpus (Doc. 5).

20          This Recommendation is not an order that is immediately appealable to the

21   Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

22

Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Replies shall not be filed without first obtaining leave to do so from the District Court.  If any objections are filed, this action should be designated case number: **CV 11-0098-TUC-FRZ**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 14th day of August, 2013.

Jacqueline M. Rateau
United States Magistrate Judge

28